# NEW YORK COURT OF APPEALS.

Louis Haas, assignee in bankruptcy, &c., respondent, agt. Thomas O'Brien, appellant.

The making of a general assignment, without preferences, under the state law does not, *per se*, contravene any provision of the bankruptcy act. That act was aimed at fraud and preference, and where neither of these are apparent there is no ground for claiming that an equitable distribution of the insolvent's estate is in violation of law.

Appeal from an order of the general term of the superior court of the city of New York, affirming a judgment entered upon the report of David McAdam, Esq., referee, in and by which he found the following facts:

First. That on the 18th day of May, 1872, Patrick Flanagan was adjudicated a bankrupt at the city of New York, in the district court of the United States for the southern district of New York, and that on the 12th day of July, 1872, the plaintiff was duly elected assignee of said bankrupt pursuant to the provisions of the United States bankrupt act.

Second. That prior to such bankruptcy proceedings, to wit, on the 9th day of January, A. D. 1872, the defendant being then embarrassed and unable to pay his debts, and being bankrupt within the meaning of the bankruptcy act, did make a general assignment, under the laws of the state of New York, to the defendant, of his assets, consisting of a stock of merchandise, for the benefit of his creditors, and that said assignment was drawn and perfected in all things in strict compliance with the laws of the state of New York.

Third. That under said assignment the defendant, as assignee, sold the assigned property and realized $2,254.17

therefor at an auction sale thereof, which sum was the fair market value thereof.

Fourth. That out of said moneys the assignee paid sixty dollars for January rent of the assignor's store and premises and fifty dollars for inventorying the assigned property, which I find were proper and necessary for the benefit of the estate of said assignor.

Fifth. The expenses connected with drawing the assignment and preparing and filing the necessary bonds and inventories amounted to $205 (ten dollars being disbursements and $195 attorneys' fees), which I find are not chargeable against said assigned estate as against the assignee in bankruptcy.

Sixth. That demand was made on said defendant for said proceeds of sale, which the defendant refused to give up.

Seventh. That the said assignee and attorney, as well as the said assignor, knew that he, the said assignor, was a bankrupt, within the meaning of said bankruptcy act, at the time when the said assignment was drawn and the services rendered thereunder.

And, as conclusions of law, the referee decided :

First. That the assignment to the defendant was and is void under the said bankruptcy act, and that it did tend to evade the provisions of said act and to prevent the assignor's property from being distributed under said act.

Second. That the items of sixty dollars and fifty dollars paid by the defendant, and before referred to (being charges incurred for the benefit of said assigned estate), were charges thereon which should be allowed to the said defendant.

Third. That the charges for attorneys' fees and disbursements are not allowable, and are disallowed.

Fourth. That the defendant is not entitled to any compensation for services under said assignment.

Fifth. That the said defendant is liable to the plaintiff for the moneys received by him, said defendant, at said sale, to wit, $2,254.17, less said sum of $110 aforesaid, to wit, for the

Haas agt. O'Brien.

sum of $2,144.17, for which amount I hereby order judgment against the said defendant, together with costs.

From the order of the general term affirming a judgment upon this report the defendant appealed.

*Samuel Hand and Jacobs & Koch*, for respondent.

*Jacob A. Gross*, for appellant.

Miller, J. — The assignment made by Flanagan to the defendant was in trust to pay all the creditors of the assignor equally and alike, and without any preference; and it was admitted upon the trial that Flanagan, being insolvent, made and executed the assignment in good faith, and to insure, under and by virtue thereof, the distribution of all his property among his creditors without preference. It was also proved that it was made without any intention to delay, hinder or defraud creditors, or to defeat the object of the bankrupt act. The provisions with which it is claimed that the assignment was in conflict, and which rendered it void, declared that "if any person, being insolvent or in contemplation of insolvency or bankruptcy, within six months before the filing of the petition by or against him, make any payment, sale, assignment, transfer, conveyance, or other disposition of any part of his property, to any person who then has reasonable cause to believe him to be insolvent, or to be acting in contemplation of insolvency, and that such payment, sale, assignment, transfer, or other conveyance, is made with a view to prevent his property from coming to the assignee in bankruptcy, or to prevent the same from being distributed under this act, or to defeat the object of, or in any way impair, hinder, impede or delay the operation and effect of, or to evade any of the provisions of this act, the sale, assignment, transfer or conveyance shall be void, and the assignee may recover the property, or the value thereof, as assets of the bankrupt; and if such sale, assign-

ment, transfer or conveyance is not made in the usual and ordinary course of business of the debtor, the act shall be *prima facie* evidence of fraud " (*See. section* 35, *Bankrupt Law ; also the last two clauses, section* 39, *Bankrupt Law, before the amendment of June*, 1874).

Although the referee found that the assignment was void under the bankrupt act, and that it did tend to evade the provisions of the same, and prevent the assignor's property from being distributed, there is no distinct finding that the assignment was made in direct contravention of the provisions cited, and the fact that it was done in good faith, and without any intention to violate or defeat the provisions of the act, as already stated, rebuts any presumption arising under the act that it was *prima facie* fraudulent. The conclusion of the referee referred to, therefore, rests upon the simple fact that the assignment was made, if at all, within six months prior to the filing of a petition in bankruptcy, under the act, in contemplation of insolvency by the bankrupt, and with the knowledge of the defendant, or reasonable cause to believe at the time that Flanagan was insolvent.

The real question to be determined, then, is, whether an act of this kind, made in good faith, and with no fraudulent intent, for the benefit of creditors, is in violation of the spirit and intention of the bankruptcy act, and for that reason fraudulent and void. The provisions cited evidently contemplated not only that the assignor should commit the act when insolvent, or in contemplation of insolvency, but that the assignee should have reasonable ground to believe that such was the case, and that the assignment was made with a view of preventing the property from being disposed of under the bankrupt act, and as therein provided. As there is no finding of fact that the intent was to evade any of the provisions of the act, and as the proof and admissions show good faith, the conclusion that the assignment was void, and did tend to evade the provisions of the act, does not appear to be warranted.

Haas agt. O'Brien.

The object and purpose of the act in question was to pro-
vide a system by which the property of an insolvent could
be appropriated and applied to the payment of his debts, in
equal and just proportions. The theory upon which the
bankrupt act was based is, that no preference shall be allowed,
that every creditor shall be entitled to his *pro rata* share of
the bankrupt's estate, and thus fraud prevented in the dis-
tribution of his assets. When, therefore, an assignment is
made for the benefit of all his creditors equally, in good
faith, without fraud or any intent found to contravene any
provisions of the law, or to hinder, delay or defraud cred-
itors, it is not apparent how such assignment can be consid-
ered as a violation of the spirit and intention of the act
itself. In *Tiffany* agt. *Lucas* (15 *Wallace U. S. S. C. R.*, 410,
412), it was held that two things must concur to bring an
assignment within the jurisdiction of the bankrupt act, viz.,
the fraudulent design of the bankrupt and the knowledge of
it on the part of the assignee. Neither of these features
characterize the case at bar. The admission and proof estab-
lish that there was no such design or knowledge. In fact,
that all the parties acted in entire good faith, and with no
intent to violate the provisions of the act. The principle is
settled in this court that when the debtor has not been pro-
ceeded against, or taken any proceedings in the bankrupt
court, an assignment for the benefit of creditors by an insol-
vent debtor, which gives no preference to any creditor, is not
an instrument void *per se* as in hostility to the bankrupt act
(*Thrasher* agt. *Bentley*, 59 *N. Y.*, 649 ; see, also, Cook agt.
*Rogers*, 31 *Mich.*, 391 ; *Beck* agt. *Parker*, 65 *Penn.*, 462;
*Hawkins' Appeal*, 34 *Conn.*, 548). The fact that proceed-
ings were instituted within the six months provided for by
the section cited does not change the application of the rule
referred to, unless there is a fraudulent design and knowledge.
In *Sedgwick* agt. *Place* (1 *N. B. R.*, 204, 673), it was held,
in the United States circuit court of New York, by Mr.
justice NELSON, that a general assignment, untainted with

fraud, as against creditors or the bankrupt act, is valid, and the property will not be turned over to the assignee in bankruptcy. An application in this case was made for the benefit of the bankrupt act within six months after the assignment had been made. In *Langley* agt. *Perry* (2 *Nat. B. Reg.*, 597), in the United States circuit court of Ohio, where the petition was filed against the debtor within six months, SWAYNE, J., held that such an assignment was not necessarily a conveyance with an intent to hinder, delay or defraud creditors, and where the intention was to secure an equal distribution of all the debtor's property among all his creditors, it was not a conveyance with an intent to defraud or delay the operation of the bankrupt act. It was said that the innocence or guilt of the act depended upon the mind of him who did it, and it was not a fraud within the meaning of the bankrupt act unless it was meant to be so.

In *Mayer* agt. *Hillman* (*U. S. Sup. Ct., reported in* 13 *Alb. Law J.*, 200), the general doctrine was upheld that a general assignment for the benefit of creditors was not fraudulent nor absolutely void. FIELD, J., who delivered the opinion of the court, said there was much force in the position of counsel that such assignment is only a voluntary execution of what the bankrupt court can compel, and as it is not a proceeding in itself fraudulent as to creditors, and does not give a preference to one creditor over another, it conflicts with no positive inhibition of the statute, and that it had the support of the decisions last above cited. He further stated that it was unnecessary to express any decided opinion upon the question, because its decision was not required for the disposition of the case. Although the point now presented was not distinctly decided in the case last cited, yet that case in connection with the other cases referred to tend strongly to sustain the doctrine that a general assignment violates no provision of the bankrupt act (*see, also, Smith* agt. *Victoria Ins. Co.*, 72 *Nat. B. R.*, 185; *Smith* agt. *Victoria Ins. Co.*, 4 *N. B. R.*, 130; *In re Kintzing*, 3 *N. B. R.*). There are

authorities adverse to the cases cited. Most of them are the decisions of the United States district court, which are not as authoritative as the cases already cited, and the distinct point now raised was not made, nor does it appear distinctly in all of them, as in the case here, that any of the assignments were made in good faith and with no design to evade the provisions of the bankrupt act (*Foster* agt. *Harkly*, 2 *N. B. R.*, 406; *In re Smith*, 3 *id.*, 377; *In re Goldschmidt*, 3 *id.*, 164; *In re Spencer* agt. *Ward*, 3 *id.*, 519; *In re Randall* agt. *Sutherland*, 3 *B. R.*, 18; *Prince* agt. *Northrup*, *id.*, 250; *In re Wells*, 1 *id.*, 171; *In re Reid*, 1 *Dillon*, 439; *Hardy* agt. *Bruminger*, 4 *N. B. R.*, 262). In the last case WOOD-RUFF, J., makes some remarks in regard to the design of the bankrupt act in reference to the property of insolvents, and the effect of some of its provisions which would not apply when the property was in the hands of a receiver appointed by a state court, but the point now raised was not presented, and the case is not analogous. Although some of these cases appear to sanction the doctrine that the bankrupt act absorbs and swallows up all other proceedings in the state courts, yet there are the strongest reasons for holding that the act was not intended to interfere with the debtor, when with an honest purpose and entire good faith he sought to apply his property for the benefit of his creditors, precisely in the same manner as was intended and as would have been done by proceedings under the bankrupt act, and probably at less expense, and far more to the advantage of the creditors. The act was aimed at fraud and preference, and where neither of these are apparent there is no ground for claiming that an equitable distribution of the insolvent's estate is in violation of the law. The latter case to which reference has been made upholds these views very decidedly, and I think should be followed. The court below erred in holding that the assignment was void and tended to evade the provisions of the bankruptcy act, and for this error, without considering the other ques-

tions raised, the judgment must be reversed and a new trial granted, with costs to abide the event.

All concur.

Note. — The United States circuit court for the northern district of Ohio, in the case of *The Globe Ins. Co.* agt. *The Cleveland Ins. Co.* (*decided April 7, 1876, and recently reported in the National Bankruptcy Register Reps., vol. 14, p.* 311), in an exhaustive opinion by Emmons, J., reviewing the English and American authorities upon the subject, *held,* that a general assignment for the equal benefit of all creditors is void as against an assignee in bankruptcy, being at war with the policy of the bankrupt law; that the same rule was applicable to the law of 1841; that such has always been the rule under each successive English act, and is now a matter of statutory provision in England; that the rule, that where a statute is taken from another country or state which has received a judicial interpretation, the presumption will be that such interpretation is also adopted, held to be applicable, in this instance, with more than ordinary force; that in the laws of 1867 the judicial interpretation which in England held general assignments to be void, as against a claimant, under the bankruptcy law, has been expressly adopted by adding the words, "or to defeat the operation of the act." It was this effect in England which the courts declared avoided such transfers. The importance of the question decided makes this conflict of authority between the state and United States court of sufficient interest to the profession to be noted .— [Rep.